AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California



| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | **FILED** |
| MOHAMMAD JAVED | ) | Case No. |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

DEC 10 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

**2:15 - MJ - 0232      CKD**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _December 2014 - February 2015_ in the county of _Sacramento_ in the

_Eastern_ District of _California_ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Unlawfully Deal in Firearms |
| 18 U.S.C. § 922(a)(1)(A) | Unlawful Dealing in Firearms |
| 26 U.S.C. § 5861(d) | Possession of an Unregistered Firearm |

This criminal complaint is based on these facts:

See Attached Affidavit of ATF Special Agent Daniel Yun

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel Yun, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _12/10/2015_

_____
*Judge's signature*

City and state: _____Sacramento, California_____

Carolyn K. Delaney, United States Magistrate Judge
*Printed name and title*

## Affidavit in Support of a Criminal Complaint

I, Daniel Yun, being duly sworn, depose and state that:

### Purpose

1. This Affidavit is made in support of a criminal complaint and an arrest warrant for:

   **a. MOHAMMAD JAVED**
   **b. ALPHONSO HARRIS II**

   For the following federal law violations:

   **COUNT 1:**   **Conspiracy to Unlawfully Deal in Firearms (18 U.S.C. § 371)**

   **COUNT 2:**   **Unlawful Dealing in Firearms (18 U.S.C. § 922(a)(1)(A))**

   > Under 18 U.S.C. § 922(a)(1)(A), "[i]t shall be unlawful for any person – except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms."

   **COUNT 3:**   **Possession of an Unregistered Firearm (26 U.S.C. § 5861(d))**

   > Under 26 U.S.C. § 5861(d), "[i]t shall be unlawful for any person – to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

### Agent Background

2. I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since September 2012. Prior to working for ATF, I was employed as a Captain in the United States Army for approximately nine years. I have received training in federal firearms and narcotics laws and regulations at the ATF National Academy and Federal Law Enforcement Criminal Investigator Training Program. I have investigated numerous cases involving federal firearms violations, involving unlawful sales, possession, manufacturing, and transportation of firearms. I have acquired knowledge and experience as to firearms and ammunition and the interstate nexus of firearms and ammunition, due to investigations, research, records, familiarity, conferring with other experts, training, teaching, and certifications. I have participated in a variety of different aspects of those investigations, including surveillance, undercover operations to conduct controlled purchases of firearms and/or controlled substances, and the execution of search and arrest warrants. I

have been the affiant on affidavits for search warrants relating to firearms, narcotics, and gang-related offenses.

3. The information contained in this Affidavit is based upon my review of the reports and files in the case, conversations with other law enforcement personnel, and my own personal knowledge. Because this affidavit is for the limited purpose of setting forth probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me through this investigation. I have set forth only those facts I deem necessary to establish probable cause to believe that the above-mentioned violation has been committed by **MOHAMMAD JAVED** (herein referred to as "JAVED") and **ALPHONSO HARRIS II** (herein referred to as "HARRIS").

## Probable Cause Statement

4. ATF has been conducting an investigation into the unlawful sales and manufacturing of firearms in the greater Sacramento area since December 2014. Since December 2014, undercover law enforcement officers and confidential informants have conducted controlled purchases of forty-four firearms. The investigation focused on S&S Tires, a tire shop located in Citrus Heights, California. ATF determined that two individuals associated with S&S Tires, MOHAMMAD JAVED ("JAVED") and ALPHONSO HARRIS II ("HARRIS") were selling firearms. JAVED is believed to be the owner of S&S Tires.

5. During the course of the investigation into JAVED and HARRIS, an ATF undercover law enforcement officer ("UC") and an ATF confidential informant ("CI") purchased firearms directly from JAVED and HARRIS. Several of these purchases were conducted at S&S Tires and several of these purchases were conducted at an undercover location used by ATF. Most of the firearms transactions were set up during phone calls and in person meetings between the ATF UC and HARRIS and JAVED. Some of the transactions were set up through the ATF CI.

6. On December 5, 2014, the ATF UC and the ATF CI met with HARRIS and JAVED at S&S Tires. JAVED told the ATF UC about rifle that would be available for sale and informed the ATF UC that it would cost $2,500. In addition, HARRIS told the ATF UC that the ATF UC could request firearms because they [HARRIS and JAVED] knew the owner of a gun store located in Penryn, CA. Subsequently, the UC purchased a Colt revolver from JAVED and HARRIS for $600.



**Photo 1 - Colt Revolver Purchased on December 5, 2014**

7.  On December 7, 2014, the ATF UC met with JAVED and HARRIS at S&S Tires. Shortly after entering the business, HARRIS asked JAVED "where that little bag at?" JAVED retrieved the bag containing magazines loaded with several rounds of ammunition. JAVED then placed the rifle on a couch in the business and described the functions of the rifle to the ATF UC.  JAVED told the ATF UC that there would be more firearms available. The ATF UC paid JAVED $3,500 for the HK rifle. JAVED wrote his cell phone number on the back of a business card and handed it to the ATF UC.



**Photo 2 - HK Rifle Purchased on December 7, 2014**

8. On December 10, 2014, the ATF UC met with JAVED and HARRIS at S&S Tires. The ATF UC and HARRIS walked to the back office of the tire shop. The ATF UC asked HARRIS why the firearms cost so much, and HARRIS explained to the ATF UC that it was because it was brand new and therefore had never been used. Shortly thereafter, HARRIS removed the pistol from underneath a couch cushion, pulled the pistol out of the package, cleared the pistol, and then handed it to the ATF UC.



**Photo 3 - Screenshot from video of controlled purchase of firearm from HARRIS**

9. The ATF UC paid HARRIS $1,500 for the Browning pistol.



**Photo 4 - Browning pistol purchased on December 10, 2014**

10. On December 15, 2014, the ATF UC met with JAVED at S&S Tires. JAVED then lifted a cushion on the couch and removed the two firearms the ATF UC was going to purchase, and the ATF UC inspected the firearm. Subsequently, the ATF UC paid JAVED $2,400 for the firearms.



**Photo 5 - Screenshot from video of controlled purchase of firearms from JAVED**

11. JAVED told the ATF UC that the source of these firearms came from a male that used to own "3D Towing" in Citrus Heights, California.



**Photo 6 - two pistol purchased on December 15, 2014 from JAVED**

12. On December 29, 2014, the ATF UC and the CI met with JAVED and HARRIS at S&S Tires. JAVED told the ATF UC that two of the firearms were at S&S Tires. The ATF UC and JAVED agreed that the ATF UC would pick up the firearms the next day (December 30, 2014).  JAVED offered to the ATF UC that he would bring the firearms to the ATF UC in Woodland, CA.  Later, HARRIS told the ATF UC that he believed that three AR-15 rifles should be coming in tomorrow (December 30, 2014).  The ATF UC told HARRIS that JAVED offered to go to a location in Woodland, CA.  HARRIS told the ATF UC that he paid $900 for the Ruger pistol that the ATF UC was purchasing the following day (December 30, 2014).

13. On December 30, 2014, the ATF UC met with JAVED and HARRIS at an undercover location located in Woodland, CA.  HARRIS and JAVED returned to JAVED's vehicle to retrieve the firearms from the rear seat of the vehicle. HARRIS placed the firearms on the bar, and removed each firearm from their respective cases. HARRIS handed each one for the ATF UC to inspect. Subsequently, the ATF UC paid JAVED $5,600 for the firearms.



**Photo 7 - Firearms purchased on December 30, 2014, from JAVED and HARRIS**

14. On January 6, 2015, the ATF UC encountered HARRIS while getting vehicle repaires for the UC vehicle.  HARRIS told the ATF UC that he was still waiting for the three

AR-15 rifles to be delivered. Later, HARRIS told the ATF UC that he never had to wait for firearms this long. HARRIS told the ATF UC that he just ordered twenty firearms so he would have them on hand, presumably to have inventory for sale. Also, HARRIS told the ATF UC that he already used his own money to pay for them. HARRIS told the ATF UC that he will spend all year to sell them if he had to.

15. On January 8, 2015, the ATF UC met with JAVED and HARRIS at the UC location located in Woodland, CA. JAVED brought the firearms into the UC location and the ATF UC inspected each of the firearms. JAVED told the ATF UC that one of his sources is supposed to have about 20 to 30 firearms available, specifically pistols. JAVED told the ATF UC that the firearms are newer firearms. JAVED also told the ATF UC that there was supposed to be a short barreled shotgun being delivered to JAVED tomorrow. The ATF UC told JAVED to let the ATF UC know the price before promising the purchase for firearms. JAVED told the ATF UC that it would take him about a week to get all the firearms together. The ATF UC paid JAVED $2,800 for the firearms.



**Photo 8 - Firearms purchased on January 8, 2015, from JAVED**

16. On January 9, 2015, the ATF UC met with JAVED and HARRIS and the UC location located in Woodland, CA. HARRIS proceeded to remove the firearms from the trunk of his Lexus RX 300. HARRIS and the ATF UC removed all the firearms and placed them on the bar counter. HARRIS screwed on the silencer to the .22 caliber pistol for the ATF UC. The ATF UC paid JAVED $14,000 for the firearms. JAVED and HARRIS told the ATF UC that they would have the silencer for the Glock and an AK rifle available for the ATF UC soon.



**Photo 9 - Firearms purchased on January 9, 2015, from JAVED and HARRIS, including a silencer.**

17. On January 20, 2015, the ATF UC met with JAVED and HARRIS at S&S Tires. The
ATF UC and JAVED went into the back room of the tire shop. JAVED told the ATF
UC that he owed him $6,000 from the Glock previously purchased on January 9, 2015.
The ATF UC then counted and paid $6,000 for the silencer. JAVED then gave the ATF
UC the silencer. The ATF UC continued to count the remainder of the cash, which
amounted to $3,500.  JAVED grabbed the rifle that was covered in a snowboarding
bag, and a pistol. The ATF UC inspected both the rifle and the pistol. JAVED then told
the ATF UC that the shotgun was just an extra item that he was just going to give the
ATF UC free of charge. The ATF UC paid JAVED the remaining $3,500 for the
firearms.



**Photo 10 – Firearms purchased on January 20, 2015, from JAVED**

18. On January 21, 2015, the ATF UC met with HARRIS and JAVED at S&S Tires. The
    ATF UC, HARRIS, and JAVED continued to the back office of the tire shop. During
    the exchange HARRIS was watching to the door of the back office so that no one
    unexpected walked in while the exchange was occurring. The ATF UC showed JAVED
    that the ATF UC had $9,700 in funds. JAVED counted and confirmed the amount that
    the ATF UC had. JAVED removed the firearms from a box that was sitting in the
    corner of the back office. JAVED told the ATF UC that he would be giving the ATF
    UC $700.00 back.



**Photo 11 - Firearms purchased on January 21, 2015, from JAVED**

19. On January 22, 2015, the ATF UC met with JAVED and HARRIS at S&S Tires. JAVED showed the ATF UC a shotgun that he said would be sold for $1,800-2,000. JAVED told the ATF UC that he would sell it to the ATF UC for $1,200.00 with the ammunition. JAVED then told the ATF UC that he purchased six large capacity magazines and .22-caliber subsonic ammunition, for the previously sold Glock and .22-caliber pistols the ATF UC purchased. The ATF UC counted and paid JAVED $9,700 for the firearms. The ATF UC asked JAVED what other firearms were left to purchase. JAVED told the ATF UC that there were three or four more pistols with silencers and a shotgun left for the ATF UC. JAVED told the ATF UC he would try to get "mini AKs, mini ARs" (referring to short barreled rifles).



Photo 12 – Firearms and ammunition purchased on January 22, 2015, from JAVED

20. On January 23, 2015, the ATF UC met JAVED and HARRIS and S&S Tires. JAVED told the ATF UC that he would be able to get two Russian AKs, one AR-15, one Tec-9,

and one "tommy gun" (referring to Thompson submachine gun) arriving for the ATF UC next week (January 26, 2015). JAVED also said the he would be getting shotguns from an unknown source for a cheap price. The ATF UC counted and paid JAVED $10,600 for the firearms. JAVED told the ATF UC that he would be showing one of the pistols with the silencers to another customer.



**Photo 13 - Firearms purchased on January 23, 2015, from JAVED**

21. On February 6, 2015, the ATF UC met with JAVED and HARRIS at S&S Tires. JAVED asked the ATF UC how much the ATF UC had to purchase firearms. The ATF UC told JAVED that the ATF UC only had $7,000. JAVED then started to show the ATF UC the firearms that the ATF UC would be able to purchase. The ATF UC noticed and told JAVED that the serial numbers on the Glock were obliterated.



**Photo 14 - Screenshot showing obliterated serial number on firearm.**

22. JAVED told the ATF UC that the ATF UC would need an additional $18,000 for the next batch of firearms. JAVED told the ATF UC the cost breakdown for the firearms;

$3,000 for the AR rifle, $1,500 for the Glock pistol, $1,500 for the Smith & Wesson pistol, and $1,000 for the shotgun. The ATF UC counted and paid JAVED $7,000.



**Photo 15 - Firearms purchased on February 6, 2015, from JAVED**

23. On February 11, 2015, the ATF UC and the CI conducted a phone call to JAVED. The ATF UC apologized to JAVED for leaving [without conducting the firearms transaction first] and not having the ATF UC's phone. JAVED told the ATF UC that it was not a problem. JAVED told the ATF UC that he was able to get firearms with silencers on them at a cheaper price. JAVED continued to tell the ATF UC that the ATF UC would have to purchase three or four at a time, and that each one would cost between $3,500 to $4,000. JAVED told the ATF UC that he would need two to three days to get the deal situated.

24. On February 17, 2015, law enforcement executed state search warrants at JAVED's residence, HARRIS's residence, and the business of S&S Tires. During the search law enforcement seized the following.

    a. At S&S Tires, law enforcement officers found:
        i. Six pistols (two of which has been previously reported as stolen)
        ii. Three silencers
        iii. Over two hundred rounds of ammunition

    b. At JAVED's residence, law enforcement officers found:
        i. Four pistols
        ii. One 12-gauge shotgun
        iii. One AK-47-style rifle
        iv. One AR-15-style rifle
        v. Over 1000 rounds of ammunition

    c. At HARRIS's residence, law enforcement officers found:
        i. Three pistols
        ii. Three rifles
        iii. Two AR-15-style rifles
        iv. Two AK-47-style rifles
        v. Ammunition for several different calibers

25. A query of ATF records indicates that neither JAVED nor HARRIS is a licensed dealer of firearms.

26. A query of the National Firearms Registration and Transfer Record indicates that neither JAVED nor HARRIS is registered to possess a silencer.

    a. Under 26 U.S.C. § 5845, the term "firearm" includes "any silencer."
    b. Under 26 U.S.C. § 5861(d), it is unlawful to possess a silencer (or any other firearm defined by 26 U.S.C. § 5845) that is not registered in the National Firearms Registration and Transfer Record.

///

///

///

///

## Conclusion

27. Based upon the evidence presented in this affidavit, there is probable cause to believe that Mohammad JAVED and Alphonso HARRIS II did commit the following federal criminal law violations:

**COUNT 1:**   **Conspiracy to Unlawfully Deal in Firearms (18 U.S.C. § 371)**

**COUNT 2:**   **Unlawful Dealing in Firearms (18 U.S.C. § 922(a)(1)(A))**

**COUNT 3:**   **Possession of an Unregistered Firearm (26 USC § 5861(d))**

I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

DANIEL YUN
Special Agent, ATF

Sworn and Subscribed to me on December 2, 2015,

Hon. CAROLYN K. DELANEY
United States Magistrate Judge

Approved as to form:

JUSTIN L. LEE
Assistant United States Attorney