MCGREGOR W. SCOTT
United States Attorney
JUSTIN L. LEE
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:16-CR-00011-JAM |
| Plaintiff, | UNITED STATES'S OPPOSITION TO DEFENDANT'S MOTION REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) |
| v. | |
| MOHAMMAD JAVED, | |
| Defendant. | |

I. **INTRODUCTION**

The United States of America submits this brief in opposition to defendant Mohammad Javed's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 89. Javed requests that the Court reduce his sentence by half to time-served. Javed argues that he is a 35-year-old, overweight man with Type-2 diabetes and therefore the on-going COVID-19 pandemic presents "extraordinary and compelling circumstances" justifying a sentencing reduction. The law and the facts of this case do not warrant such a reduction. The defendant is not eligible for relief because he does not meet the requirements for compassionate release, and even if he were eligible, such a reduction in sentence is unwarranted. The presence of COVID-19 does not mean that all overweight inmates with Type-2 diabetes should be released from BOP. Moreover, a sentence reduction here is unwarranted in light of the defendant's on-going danger to the community and in consideration of the § 3553(a) factors. The

Court should deny his motion.

## II. FACTUAL BACKGROUND

### A. Javed used employment at S&S Tires as a cover for his unlawful gun dealing.

Over a three-month period, Javed sold thirty-nine firearms to an undercover ATF agent. Factual Basis for Plea, Dkt. 58. These firearms included pistols, rifles, silencers, and a gun with an obliterated serial number. *Id.* Javed used the business location of S&S Tires in Citrus Heights as a cover for his firearms trafficking operation. Final Amended Presentence Investigation Report ("PSR"), Dkt. 60 at ¶ 5-24.

### B. Javed convicted of firearms trafficking and sentenced to 39 months incarceration.

Javed was charged by information with unlawful dealing in firearms. Information, Dkt. 10. Javed pleaded guilty pursuant to a written plea agreement. Plea Agreement, Dkt. 58. The Court sentenced Javed to 39 months of incarceration. Judgment, Dkt. 84.

### C. Incarceration and Projected Release Date

Javed is currently serving his 39-month sentence in FCI Sheridan. Javed's current release date is January 27, 2022.

### D. Javed's Current Motion for Compassionate Release

Javed is currently 35 years old, has Type-2 diabetes, and reports that he is classified as overweight. Dkt. 89 at 7, 20. In the motion, Javed argues that he is at high risk of serious complications from COVID-19 because of his weight and diabetes. *Id.* at 18-20.

### E. Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1), an inmate may file a motion for sentence reduction after completing the BOP exhaustion requirements or after waiting 30 days from receipt of a request by the Warden, whichever is earlier. On June 8, 2020, the defendant requested consideration for compassionate release through the BOP. Exhibit 1. More than 30 days have elapsed since receipt of Javed's request, satisfying the statutory requirement in 18 U.S.C. § 3582(c)(1).

## III. THE BUREAU OF PRISONS' AND CONGRESS'S RESPONSE TO COVID-19

### A. COVID-19-specific safety precautions

BOP has taken steps to try to protect inmates' and employees' health and to try to keep COVID-

19 outside of its facilities.  The BOP continues to revise and update its action plan in response to the fluid nature of the COVID-19 pandemic.  On August 5, 2020, BOP implemented Phase 9 of the COVID-19 Action Plan.  The BOP has continued working with the CDC, confirming that its approach aligns with current CDC guidance for COVID management in correctional facilities.  Federal Bureau of Prisons, Correcting Myths About BOP and COVID-19, at 1, available at https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf ("Correcting Myths").  Currently, BOP medical staff are "conducting rounds and checking inmate temperatures at least once a day"--twice a day where inmates are quarantined or in isolation.  *Id.*  All BOP staff and inmates have been issued cloth masks to wear on a daily basis--with staff required to wear masks, gloves, and potentially gowns when dealing with isolated and quarantined inmates.  *Id.* at 1, 3.  "Cleaning supplies have been provided to inmates," and the BOP has provided training on CDC best practices regarding disease transmission and prevention (including sanitation).  *Id.* at 2.  Common areas are sanitized multiple times a day.  *Id.* at 3.

BOP of course has not been immune from the COVID-19 pandemic.  Across the country, 3,121 BOP inmates in BOP custody---out of a total of approximately 125,000---have been diagnosed with COVID-19.  BOP, COVID-19 Coronavirus page, available at https://www.bop.gov/coronavirus/index.jsp (last visited November 13, 2020).  All are (or were) isolated from fellow inmates and receiving medical treatment.  Correcting Myths, *supra*, at 2.  "Inmates whose conditions cannot be managed within the institution are sent to the local hospital[.]"  *Id.*

Currently, no inmates, but two staff members are positive for COVID-19 in Javed's facility, FCI Sheridan.  BOP, COVID-19 Coronavirus page, available at https://www.bop.gov/coronavirus/index.jsp (last visited November 17, 2020).

### IV.     LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

A compassionate-release motion is a request for a permanent reduction in a defendant's federal sentence.  A district court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010).  Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the

unserved portion of the original term of imprisonment)[.]" 18 U.S.C. § 3582(c)(1). Because this relief is both drastic and permanent, it is subject to strict statutory conditions.

First, a district court can evaluate a defendant's request for compassionate release only "after the defendant has fully exhausted all administrative rights" before the BOP. 18 U.S.C. § 3582(c)(1)(A).

Second, in evaluating compassionate-release requests, courts must follow both the statute and relevant, binding policy statements. *See id.*; 28 U.S.C. § 994(t); U.S.S.G. §1B1.13. Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A). Specifically, the statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission"--in this case, USSG §1B1.13. *Id.* As the Supreme Court recognized in *Dillon*, 560 U.S. at 827, because § 3582(c) permits a sentencing reduction only where it is "consistent with applicable policy statements issued by the Sentencing Commission," such policy statements are binding on a court determining eligibility.

Section §1B1.13 of the Sentencing Guidelines explicitly defines the "extraordinary and compelling reasons" that make a defendant eligible for compassionate release.[1] *See* 28 U.S.C. § 994(t). They include, as relevant here, (1) a "terminal illness"; (2) a serious medical condition that "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (3) a defendant who is at

---

[1] The Second Circuit recently held that Application Note 1(D) of §1B1.13 "does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act." *United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *1 (2d Cir. Sept. 25, 2020). Under the Second Circuit's interpretation, district courts have broad discretion to determine in the first instance what constitutes an "extraordinary and compelling reason," and that "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at *8 (quoting 28 U.S.C. § 994(t)).

There is no Ninth Circuit authority on the issue of the application of § 1B1.1 to compassionate release motions brought under the First Step Act, and as the Second Circuit acknowledged, "[t]his question has split district courts across the country." *Brooker*, 2020 WL 5739712 at *5. The government acknowledges that the Court has previously held that it has discretion to define what qualifies as an extraordinary and compelling reason justifying early release under Application Note 1(D). *United States v. Darling*, No. 2:04-CR-00250-JAM-1, 2020 WL 4339987, at *2 (E.D. Cal. July 28, 2020). The government's position respectfully remains that this approach untethers § 3582 compassionate release motions from the "general rule of finality" in sentencing. *Dillon*, 560 U.S. at 824. Section 1B1.13 provides appropriate and fitting guidance for the assessment of whether a defendant has established extraordinary and compelling circumstances.

OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

4

least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. §1B1.13 (other grounds omitted).

"In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted." *United States v. Recinos*, No. 1:12-cr-35-DAD-BAM, 2020 WL 4194080, at *3 (E.D. Cal. July 21, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998)). "Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant." *Id*. (citing *United States v. Greenhut*, No. 2:18-CR-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-CR-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020)). Thus, the defendant bears the burden to prove that "extraordinary and compelling reasons" exist to support his motion. 18 U.S.C. § 3582(c)(1)(A).

Third, even for defendants who are statutorily eligible, compassionate release is a "rare" and "extraordinary" remedy, within a district court's discretion to deny. *See United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, 2020 WL 1291835, at *2–*3 (W.D.N.C. Mar. 16, 2020). Specifically, "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted. *See, e.g.*, *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (collecting pre-trial detention cases); *accord United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("most courts treat compassionate release 'due to medical conditions [a]s ... a rare event.'"). This reluctance to expansively apply compassionate release is grounded in a concern that any less narrow application would yield significant sentencing disparities. *United States v. Ebbers*, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020).

### V.     ARGUMENT

The defendant fails to demonstrate that he should receive a reduction to time served because he has not established extraordinary and compelling reasons to commute his sentence, especially in light of the § 3553(a) factors. As detailed above, U.S.S.G. §1B1.13 explicitly defines the "extraordinary and

OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

5

compelling reasons" that make a defendant eligible for compassionate release.  *See* 28 U.S.C. § 994(t). Here, the defendant satisfies none of the reasons listed.  He is 35-years-old, does not have a terminal illness, and does not have a condition that diminishes his ability of self-care within the prison facility.

### A. Javed Fails to Demonstrate that He is Entitled to Release from His Sentence

Javed fails to carry his burden to establish his eligibility for compassionate release.  Javed argues that his diabetes places him at greater risk of severe illness from COVID-19.  Dkt. 89 at 18.  Under Javed's rationale, all inmates with Type-2 diabetes would have to be released from BOP.  As the Third Circuit recently held, "[w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system," but the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release…" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Because the defendant's motion is at bottom a request to be released early because of COVID-19, the Court should deny the motion.  *See United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.").

"The First Step Act did not revise the substantive criteria for compassionate release"--criteria set forth in the Sentencing Commission's binding "policy statement," U.S.S.G. 1B1.13.  *Ebbers*, 2020 WL 91399, at *4—*5; 18 U.S.C. § 3582(c)(1)(A).  As courts have recognized, Congress intended that the "Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting split in authority).  The Sentencing Commission's policy statement--U.S.S.G. § 1B.1.13--is thus binding on this Court.  *See Dillon*, 560 U.S. at 827; *see, e.g.*, *United States v. Nasirun*, No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020).

As noted above, a defendant seeking a time-served sentence must establish that his condition falls within one of the categories listed in the policy statement.  Those categories include, as relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §1B1.13, comment. (n.1(A)).

The general threat of COVID-19--which poses a threat to every non-immune person in the country--does not satisfy these conditions. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. To classify COVID-19 as an extraordinary and compelling reason, by itself, would be inconsistent with the text of the statute and the policy statement. Moreover, it would have detrimental real-world effects, resulting in the inequitable treatment of inmates. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic.

### B.    Javed should serve the sentence imposed in this case.

Even if Javed qualified for compassionate release under the Guideline, serious illness is not the only requirement for compassionate-release eligibility; a defendant must also demonstrate that he is "not a danger to the safety of any other person or to the community." USSG §1B1.13(2). Javed cannot make that showing, and thus he is ineligible for a reduced sentence.

Specifically, this Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG §1B1.13; *see United States v. Gotti*, 433 F. Supp. 3d 613, 615, 619-620 (S.D.N.Y. 2020) (release was inappropriate regardless of extraordinary and compelling circumstances; defendant posed a continuing danger to the public); *accord United States v. Urso*, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); *United States v. Applewhite*, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-old inmate based on danger).

The record here precludes any such finding. To the contrary, the defendant has not made a showing that he is not a danger to the community. The defendant was arrested, charged, and convicted for gun trafficking. During the course of three months, the defendant sold thirty-nine firearms – including silencers and ammunition – all without any regard to the real world harm caused by black market guns. Nothing about the COVID-19 pandemic reduces the defendant's danger or reduces the appropriateness of the sentence originally imposed in this case.

OPPOSITION TO DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE

7

**C.     Even Assuming Javed Were Otherwise Eligible, the 18 U.S.C. § 3553(a) Factors Do Not Support a Shorter Sentence.**

Any compassionate-release decision – even for a statutorily-eligible defendant – must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i). Those factors do not support his request for premature, permanent release. They support his current sentence.

Javed asks for a sentence reduction to time served. Javed argues that "the overriding factor under § 3553(a) that was not present at the time of sentencing is the spread of COVID-19." Dkt. 89 at 23. This is not appropriate because the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release." *Raia*, 954 F.3d at 597.

Given the nature and circumstances of Javed's criminal activity in this case, a sentence reduction is inconsistent with a careful weighing of the § 3553(a) factors and a sentence reduction is not warranted. Javed was convicted of gun trafficking. This was not an accident or a one-time activity. The undercover ATF agent meet with Javed and his co-defendant on ten separate occasion over the course of three months to purchase 39 firearms. Because of his criminal conduct, the defendant was sentenced to serve 39 months in custody. This was an appropriate sentence when it was imposed and it remains an appropriate sentence today. And, the COVID-19 pandemic does not warrant a reduction to time served for this particular defendant.

## VI.     QUARANTINE REQUESTED

Should the Court be inclined to grant Javed's motion, the United States requests a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public. The government further requests that, if this Court ultimately grants relief, the government be given an opportunity to brief appropriate conditions—including a release plan, a mandatory quarantine, and a period of home confinement as a condition of supervised release. *See* 18 U.S.C. § 3582(c)(1)(A).

///

///

///

OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

8

### VII.  CONCLUSION

For the reasons discussed above, the United States respectfully requests that the Court deny Javed's motion for release from his sentence.

Dated:  November 17, 2020

McGREGOR W. SCOTT
United States Attorney

By: /s/ *Justin L. Lee*
JUSTIN L. LEE
Assistant United States Attorney